IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| ANTHONY ROHLF, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | Civil Action No. 4:20-CV-200-O |
| | § | |
| BOBBY LUMPKIN, Director, | § | |
| Texas Department of Criminal Justice, | § | |
| Correctional Institutions Division, | § | |
| | § | |
| Respondent. | § | |

## AMENDED OPINION AND ORDER

The Court's attention has been called to the fact that a portion of the content beginning at the bottom of page 19 of the Opinion and Order signed on February 8, 2021, was omitted (ECF No. 26).[1] To correct this error and in aid of Petitioner's appeal, the Court issues this amended opinion and order to include the omitted material. FED. R. CIV. P. 60(a).

Before the Court is a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 filed by Petitioner, Anthony Rohlf, a state prisoner confined in the Correctional Institutions Division of the Texas Department of Criminal Justice, against Bobby Lumpkin, director of that division, Respondent. After considering the pleadings and relief sought by Petitioner, the Court has concluded that the petition should be denied.

## I.  BACKGROUND

Petitioner's appellate counsel summarized the facts of the case as follows (any spelling, punctuation, and/or grammatical errors are in the original):

On the evening of April 10, 2015, three friends, Jeff Henry, Pat Cleburn, and

---

[1]The February 8, 2021, Opinion and Order is not paginated; thus, the pagination in the ECF header is used.

David Allen, who shared a house set out to drink beer and relax on a Friday evening. They went to Hoots Bar in Rendon, Texas. Hoots was a small local bar with pool tables, electronic games and a regular clientele, many of whom knew one another.

On the same evening, another trio, Ashley Donahue, Paul Thomas and . . . Anthony Rohlf, set out with much the same purpose for Hoots Bar. When they arrived at the bar they headed back to play pool. Jeff noticed Ashley while she was playing pool and was attracted to her. After Paul and Anthony had a disagreement over the rules of the game, Paul moved off to play an electronic game. Anthony decided he was not enjoying the bar and asked Ashley for the keys to her car. Ashley refused to give him the keys, but did give him the key fob remote so he could sit in the car.

Then Ashley and Paul sat down at a table behind Jeff, Pat and Dave to drink beer. The attraction that Jeff felt toward Ashley was mutual and she asked Paul to ask Jeff to join them at their table. Jeff did so. At closing time, Jeff invited Ashley to come home with him. She agreed. Ashley, Jeff and Paul headed out of the bar while Pat and Dave settled their tab.

In the parking lot, Ashley's car was parked next to Dave's truck. Ashley approached Anthony, introduced him to Jeff and then told him she was going home with Jeff and his friends. Anthony, who is her cousin, got angry at this and accused her of being a whore and planning to have sex with all of them.

Jeff turned to ask Dave if he had any problem with Ashley coming home with them and Dave said no. Suddenly, Anthony ran up and hit Jeff in the side. After a few moments, Jeff looked down at the area of his body where he received the blow and realized he had been stabbed in the side just under his arm pit. Anthony had retreated into the darkness.

When Pat realized that Jeff had been stabbed he got up into the front passenger side of the truck (the truck sat very high because it was jacked up with risers) and said he was going to call the police. Anthony then ran up to him an stabbed him in the right arm.

Dave, who owned the truck, had a handgun in the truck. He retrieved it. Anthony, jumped in Ashley's car in and began to drive out of the parking lot. Paul was in the front passenger seat. Dave aimed the gun at the car, but because Anthony was no longer threatening him or his friends, he did not fire.

The three roommates, along with Ashley, returned to the bar and the Sheriff's Department and an ambulance were called. Once inside the bar, Jeff began having trouble breathing, and laid down on the floor. Pat was given some cloths to staunch

2

the bleeding of his arm. When the ambulance arrived, Jeff and Pat were taken to John Petersmith Hospital. Jeff had a punctured lung and wound up in the hospital for two weeks. Pat's wound was cleaned and closed and he was then able to proceed to the Sheriff's Office to give a statement.

Ashley told sheriff's deputies at the bar that Anthony was most likely headed for her house in rural Johnson County. The Johnson County authorities were informed and Lieutenant Stubbs of the Johnson County Sheriff's Office was in the area. He saw the car, got behind it and turned on his emergency lights. Anthony stopped the car and ran on foot. Lieutenant Stubbs was unable to catch him and make an arrest.

On April 25, 2015, Ashley Donahue was pulled over by Cleburne Police for a traffic violation. In the car was a male passenger who identified himself as Robert Johnson. He denied having any identification with him. When Officer Alexander could not find a Robert Johnson who fit the man, he asked for more information and the man verbally gave him a social security number and told him he was from Louisiana. The first three numbers of the social security number did not correspond to Louisiana, but to Kansas.

Officer Alexander then had the man step from the car and saw that he had a wallet chained to his belt. When he checked the wallet he found a Texas driver's license for Anthony Rohlf. Finding there was a felony warrant out for Anthony, he arrested him.

At trial, Anthony testified and gave a somewhat different account of the conflict. He said that Jeff pushed him and he hit Jeff with his fist. A brief exchange of blows occurred, then Pat and Dave begin [sic] to rush toward Anthony and Jeff. That is when Anthony pulled a knife and stabbed Jeff in fear that he was about to be overwhelmed. Anthony felt he was being "backed into a corner" by Jeff and Pat and he saw Dave coming around the truck. He believed Dave had a gun because he had seen an empty holster in the truck. He said he stabbed Pat in the arm as Pat approached Anthony at a brisk jog. He then fled in Ashley's car.

Anthony was charged, in two cases, with aggravated assault with a deadly weapon. Both cases were tried together before a single jury. The court included a charge on self defense in each case in its jury instructions. The jury found Anthony not guilty in the assault on Jeff but convicted him in the assault on Pat. [Anthony] went to the court for punishment and was sentenced, after pleading true to the enhancement count, to 25 years in the Institutional Division of the Texas Department of Criminal Justice.

App. Br. 3-8, ECF No. 18-12 (record citations omitted).

Petitioner's conviction was affirmed on appeal and the Texas Court of Criminal Appeals refused his petition for discretionary review. Electronic R., ECF No. 18-19. Petitioner also filed a state habeas-corpus application challenging his conviction, which was denied by the Texas Court of Criminal Appeals without written order. SHR[2] 13-44, ECF No. 18-32; Action Taken, ECF No. 18-27. This federal petition for habeas-corpus relief followed.

## II. ISSUES

Petitioner raises six grounds for relief, which are generally construed to raise the following claims:

(1)  he was denied a sufficiency-of-the-evidence review on appeal;

(2)  the trial court breached its official duty and was an interested party;

(3)  there were defects in the state habeas proceeding as to his ineffective-assistance-of-trial-counsel claims;

(4)  he was denied counsel at critical stages and not allowed to supplement the record in the state habeas proceedings;

(5)  there were defects in the state habeas proceeding as to his ineffective-assistance-of-appellate-counsel claims; and

(6)  the prison law library is inadequate.

Pet. 6-7a, ECF No. 1. Because the claims are multifarious and rambling, they are addressed in this opinion as thoroughly as practicable.

## III. RULE 5 STATEMENT

Respondent does not believe that the petition is untimely or subject to the successive-petition bar but does assert that one or more of Petitioner's claims are unexhausted and procedurally barred.

---

[2]"SHR" refers to the record of Petitioner's state habeas proceeding in WR-90,317-01.

Resp't's Ans. 5, ECF No. 17. To the extent Petitioner's claims are deemed unexhausted in state court, Petitioner has expressly waived the claims. Mot. & Order, ECF No. 24 & 25.

## IV. DISCUSSION

### A. Legal Standard for Granting Habeas-Corpus Relief

A § 2254 habeas petition is governed by the heightened standard of review provided for in the Anti-Terrorism and Effective Death Penalty Act. 28 U.S.C. § 2254. Under the Act, a writ of habeas corpus should be granted only if a state court arrives at a decision that is contrary to or an unreasonable application of clearly established federal law as established by the Supreme Court or that is based on an unreasonable determination of the facts in light of the record before the state court. 28 U.S.C. § 2254(d)(1)-(2); *Harrington v. Richter,* 562 U.S. 86, 100 (2011). This standard is difficult to meet and "stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings." *Richter*, 562 U.S. at 102.

The statute further requires that federal courts give great deference to a state court's factual findings. *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000). Section 2254(e)(1) provides that a determination of a factual issue made by a state court shall be presumed to be correct. The petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003); *Williams v. Taylor*, 529 U.S. 362, 399 (2000). Additionally, when the Texas Court of Criminal Appeals, the state's highest criminal court, denies relief without written order, typically it is an adjudication on the merits, which is likewise entitled to this presumption. *Richter,* 562 U.S. at 100; *Ex parte Torres,* 943 S.W.2d 469, 472 (Tex. Crim. App. 1997). In such a situation, a federal court "should 'look through' the unexplained decision to the last reasoned state-court decision providing" particular reasons, both

5

legal and factual, "presume that the unexplained decision adopted the same reasoning," and give appropriate deference to that decision. *Wilson v. Sellers,* --- U.S. ---, 138 S. Ct. 1188, 1191-92 (2018).

### B.  Sufficiency of the Evidence

Under his first ground, Petitioner claims that he has never been given a proper "sufficiency review" of the evidence on direct appeal. Pet. 6, ECF No. 1; Pet'r's Mem. 1, ECF No. 2. On appeal, Petitioner's appointed counsel filed an *Anders* brief and Petitioner filed a pro se response challenging, among other things, the legal and factual sufficiency-of-the-evidence as to the "nature of the weapon used." Anders Br., ECF No. 18-12; App. Am. Br. 2, 15-16, ECF No. 18-11. Specifically, he argued:

> Where the deadly nature of the weapon is an issue, the jury will not be allowed to infer deadliness solely from superficial wounds, even though those wounds may require suturing. There was but a single wound on the shoulder of Pat. It was only described once as being covered in a bloody gauze. Pat was taken to the hospital after a delay, and only stayed there for a short time. No expert testimony was given by anyone (doctors, EMT, nurses, etc). The wound was not shown to be deadly by its nature, area of injury, loss of function or pain other then the initial. Evidence should be produced in this cause in and of itself, and should not be inferred from the other case as I was acquitted of the cause.

App. Am. Br. at 15 (citations omitted).

The appellate court conducted an independent review of the record, counsel's brief, and Petitioner's pro se response, agreed that the appeal was wholly frivolous and without merit, and found nothing in the record that might arguably support the appeal. Mem. Op. 2-3, ECF No. 18-4. Petitioner claims that he was denied "his direct appeal" as a result of the appellate court's failure to consider or address his sufficiency-of-the-evidence claim in light of *Bledsoe v. State,* 178 S.W.3d 824, 826-27 (Tex. Crim. App. 2005), providing that when an appellant's counsel submits an *Anders*

brief, the state appellate court is not required to address the appellant's arguments in his pro se response. Respondent asserts that the claim is unexhausted and procedurally barred, however the Court finds that Petitioner sufficiently exhausted the claim by raising it in his pro se response to the *Anders* brief and generally in his petition for discretionary review. Resp't's Answer 6, ECF No. 17; App. Am. Br. 2, 15-16, ECF No. 18-11; Pet. for Discretionary Review 1, ECF No. 18-16.

Nevertheless, contrary to Petitioner's assertion, the appellate court did consider his sufficiency-of-the-evidence claim, albeit in an *Anders* context, and ruled against Petitioner. A deadly weapon is "anything that in the manner of its use or *intended* use is capable of causing death or serious bodily injury." TEX. PENAL CODE ANN. § 1.07(a)(17)(B) (West 1994). Deferring to the state court's implied finding that the evidence was sufficient to show that Petitioner's knife as used was a deadly weapon, the state court's determination of the issue is not objectively unreasonable. Although a knife is not a deadly weapon per se and there was no expert medical testimony to establish the deadliness of the knife, there was opinion testimony on the deadliness of a knife from Sergeant Kelly and Deputy Rodriguez. Reporter's R., vol. 4, 9, 28-29, ECF No. 18-24. Viewing that testimony in the light most favorable to the jury's deadly-weapon finding, the evidence was sufficient to support the jury's deadly-weapon finding. *Jackson v. Virginia,* 443 U.S. 307, 319 (1979). The seriousness of the injury is irrelevant. *See Denham v. State,* 574 S.W.2d 219 (Tex. Crim. App. 1978). And, although it does appear that a portion of the testimony was not recorded or transcribed, there is no indication that the absence of that portion was material to Petitioner's sufficiency claim or in any way impeded meaningful review of the claim. Reporter's R., vol. 4, 21, ECF No. 18-24; *Schwander v. Blackburn,* 750 F.2d 494, 497-98 (5th Cir. 1985) (explaining that petitioner was not denied a meaningful appeal where the omitted portions of the trial transcript were

immaterial to the error alleged on direct appeal); *Thomas v. Cain,* No. 12-2818, 2013 WL 5960808, at \*5 (E.D. La. Nov. 6, 2013) (finding that the record was adequate for resolution of appellate claims).

### C. Trial Court Error

Under his second ground, Petitioner claims that the trial court breached its official duty and was an interested party. Pet. 6, ECF No. 1; Pet'r's Mem. 3-6, ECF No. 2. According to Petitioner, although he was charged with two separate offenses against two separate victims, "the defense combined <u>both</u> individual offenses into a single act of self-defense against a group" and the trial court's charge "only authorized all or nothing verdicts." *Id.* at 3-4 (emphasis in original). Therefore, "[w]hen the verdict that was against the instruction was returned [in Patrick's case], it was the duty of the court to repair it"—*i.e.,* resolve the conflicting verdicts. *Id.* at 4. In other words, he "was entitled to an acquittal if self-defense was proved in either case, as the same facts produced such a right." SHR 21, ECF No. 18-32. He also claims that the trial court was an interested party and biased. Respondent asserts that the claim is unexhausted and procedurally barred, however the Court finds that the first claim was sufficiently exhausted in Petitioner's state habeas-corpus application. *Id.* at 20-21; Resp't's Answer 6, ECF No. 17. The Court does, however, agree that the second claim was unexhausted in the state courts and is therefore waived. Mot. & Order, ECF Nos. 24 & 25.

The state habeas court adopted the following factual findings relevant to the first issue:

13.    The jury found [Petitioner] guilty of aggravated assault with a deadly weapon as alleged in the indictment.

14.    The jury found [Petitioner] not guilty in Cause Number 1411872, aggravated assault with a deadly weapon.

15.    This case and Cause Number 1411872 alleged aggravated assault with a

8

deadly weapon occurring on the same day, during the same transaction, against two separate victims, Jeff and Patrick.

16.    There were not multiple assailants but two victims.

17.    [Petitioner] stabbed the victim in Cause Number 1411872, Jeff, as Jeff was standing outside a vehicle after a confrontation regarding [Petitioner]'s cousin.

18.    [Petitioner] stabbed the victim in this case, Patrick, while Patrick was in friend's truck trying to call the police after [Petitioner] stabbed Jeff outside the vehicle.

SHR 164, ECF No. 18-32 (record citations omitted).

Based on its findings, the state court concluded that the verdict was proper and responsive to the court's charge. *Id.* at 173. Petitioner presents no convincing evidence or argument to rebut the state habeas court's findings. Thus, deferring to those findings, there was no conflict in the jury's answers in the two cases and the trial court was not required to provide additional instructions or retire the jury for further deliberations. From the testimony, the jury could have reasonably concluded that there were not multiple assailants acting together at the same time and that at the time Petitioner assaulted Patrick he was not under attack or attempted attack. *See Jordan v. State,* 593 S.W.3d 340, 343 (Tex. Crim. App. 2020). His argument that the acquittal by reason of self-defense in one case "discharged" him from being held responsible for his actions in both cases and/or somehow rendered him the only victim against multiple assailants is not supported by the evidence and was not a defensive theory at trial. Pet'r's Mem. 7, ECF No. 2; SHR 139, ECF No. 18-32.

### D. Defects in the State Habeas Proceeding

Under his third and fifth grounds, Petitioner claims that the state habeas court's fact-finding process was unreasonable and inadequate to resolve his ineffective-assistance-of-counsel claims and

that the state court's conclusions drawn therefrom are thus unreasonable. Pet. 7, 11, ECF No. 1; Pet'r's Mem. 6-25, 28-29, ECF No. 2. Also, a general theme throughout Petitioner's pleadings is that there are inaccuracies in the state habeas court's factual findings and that he was not allowed to supplement the record in state court to include, among other things, (1) Petitioner's proposed findings of fact and conclusions of law; (2) the attachments included in this federal petition; (3) discovery of items to prove the issues, "such as jury charge, transcript, prosecution files, etc."; (4) interrogatories; (5) a live hearing; and (6) "any other things deemed relevant to the issues, such as appeal transcripts, etc." Pet'r's Mem. 2-3, ECF No. 2.

Petitioner's claim that the fact-finding process was inadequate is not a basis for federal habeas-corpus relief. It is well established that alleged errors or defects in state habeas proceedings are not cognizable on federal habeas review. *See Rudd v. Johnson,* 256 F.3d 317, 320 (5th Cir. 2001); *Trevino v. Johnson,* 168 F.3d 173, 180 (5th Cir. 1999); *Nichols v. Scott,* 69 F.3d 1255, 1275 (5th Cir. 1995). Nor do any insignificant discrepancies or inaccuracies in the findings justify relief. Further, having reviewed the record, the state court's resolution of Petitioner's ineffective-assistance-of-counsel claims was not objectively unreasonable.

A criminal defendant has a constitutional right to the effective assistance of counsel at trial and on a first appeal as of right. U.S. CONST. amend. VI, XIV; *Evitts v. Lucey*, 469 U.S. 387, 393-95 (1985); *Strickland v. Washington*, 466 U.S. 668, 688 (1984); *Anders v. California*, 386 U.S. 738, 744 (1967). *See also Styron v. Johnson,* 262 F.3d 438, 450 (5th Cir. 2001) (applying the *Strickland* standard to ineffective assistance claims against appellate counsel). An ineffective-assistance claim is governed by the familiar standard set forth in *Strickland v. Washington*. 466 U.S. at 668. To establish ineffective assistance of counsel under this standard, a petitioner must show (1) that

10

counsel's performance fell below an objective standard of reasonableness, and (2) that but for counsel's deficient performance the result of the proceeding would have been different. *Id.* at 688. Both prongs of the *Strickland* test must be met to demonstrate ineffective assistance. *Id.* at 687, 697.

In applying this standard, a court must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance or sound trial or appellate strategy. *Id*. at 668, 688-89. Judicial scrutiny of counsel's performance must be highly deferential. *Id.* at 689. Where, as here, the state courts adjudicated the ineffective-assistance claims on the merits, this court must review petitioner's claim under the "doubly deferential" standards of both *Strickland* and § 2254(d). *Cullen v. Pinholster,* 563 U.S. 170, 190 (2011). In such cases, the "pivotal question" for this Court is not "whether defense counsel's performance fell below *Strickland*'s standard"; it is "whether the state court's application of the *Strickland* standard was unreasonable." *Richter,* 562 U.S. at 101, 105.

In his state habeas application, Petitioner raised the following ineffective-assistance claims against his trial counsel Ray Hall and Brandon Weaver:

| | |
|---|---|
| [Ground Three:] | Counsel failed to file any post-verdict motions; |
| [Ground Four:] | Counsel failed to inform Applicant of his right to a mandatory severance upon request; |
| [Ground Six:] | Counsel failed to investigate and properly prepare a defense; |
| [Ground Seven:] | Counsel failed to object to the jury charge; |
| [Ground Eight:] | Counsel failed to impeach witnesses with failed drug tests and medical records; |
| [Ground Nine:] | Counsel failed to object to prosecutorial misconduct and misstatements of law; |

| [Ground Ten:] | Counsel failed to inform Applicant of the State's twenty year plea offer; |
| [Ground Eleven:] | Counsel advised Applicant to commit perjury; and |
| [Ground Thirteen:] | Counsel failed to attack the use of the prior conviction for enhancement as it was invalid. |

SHR 161-62, ECF No. 18-32.

Hall submitted an affidavit responding to the allegations as follows (any spelling, punctuation, and /or grammatical errors are in the original):

> In response to Ground Three - The verdict was not clearly wrong. The Applicant keeps arguing that since the jury found him not guilty on the first case, they should have found him not guilty on the second case. Applicant keeps arguing self-defense against multiple assailants. There were not multiple assailants. There were two (2) people he was accused of attacking. They were not attacking him at the same time. In the first case, he was found not guilty of the offense that took place by the Applicant's car. The Applicant exited his vehicle and an altercation with one individual occurred. That individual was stabbed between Applicant's car and the driver's side of the truck at that time. The second individual Applicant was alleged to have stabbed was on the passenger side of the truck. Applicant allegedly stabbed the second individual in the shoulder. Applicant did not fight multiple assailants. Applicant allegedly stabbed two (2) people individually. Applicant was never attacked by the individuals at the same time. Immediately after the trial was completed, Applicant signed the Notice of Appeal and requested court appointed appellant counsel. The defense counsel team was released from representation at that time. There were no objections to be made once the trial ended. A Motion for New Trial Should have been filed by the new appellate attorney if he felt there were grounds for it, not trial counsel. The defense counsel team did not believe there were any motions or objections that could have or should have been made filed at that time. The argument that Appellate is alleging does not apply to the facts of this case. Applicant is also arguing that defense counsel admitted to his Exhibit A through silence as I or we had no duty or responsibility to answer.[3]
>
> In reference to Ground Four — Applicant was informed of his right of severance. The alleged crime was one continuous incident. Applicant stated that there was no reason to have two (2) separate trials and he wanted to resolve the matters

---

[3]"Exhibit A" is a handwritten letter from Petitioner to counsel alleging professional misconduct and demanding a response from counsel in 30 days. SHR 69-74, ECF No. 18-32.

simultaneously. The alleged crime happened on one (1) night within fifteen (15) minute time period. The Applicant would not have been acquitted of the second case because of collateral estoppel and/or the double jeopardy clause. Two individuals were allegedly stabbed by the Applicant. After Applicant allegedly stabbed one individual, he ran over and allegedly stabbed the second individual. None of his allegations would have occurred during pre-trial through habeas corpus means. Applicant allegedly stabbed two (2) individuals during one (1) incident. It was continuous conduct. The Applicant was in a rage. Applicant allegedly stabbed two (2) individuals and allegedly fled the scene in a vehicle. These two (2) cases were the same criminal episode and was proper because a defendant may be prosecuted in a single criminal action for all offenses arising out of the same criminal episode. The decision to try the cases together was to eliminate the possibility of consecutive sentences. All of the options were discussed with the Applicant. Defense counsel stated our advice and Applicant made the final decision. If these two (2) cases were tried separately, they both could have ended in convictions. Again, Applicant is alleging that I admitted to his Exhibit A though silence that he mailed to my office. I did not respond. I am under no duty or obligation to respond to the document he sent to my office.

     . . .

     In reference to Ground Six — Applicant is well aware that his case was investigated. I personally visited the crime scene twice along with my investigator. We spoke with the owner of the club where the alleged incident occurred. We spoke with the people who were working at the club at the time of the alleged incident. We returned to the club a second time to interview the bartender that was on duty the night of the alleged incident. The bartender did not have any knowledge of the alleged incident that took place outside the club. The bartender only knew what transpired after the injured individuals came back inside the club. We had the same information from other employees that were present the night of the alleged incident. However, the bartender did know the cousin of the Applicant and informed us of another club where she may be found. We went to the other club several times hoping that the cousin would show up since we had not been able to speak with her. The bartender at the other club told us when the cousin usually comes into that club. We went to this club on three (3) other occasions hoping to locate her. My investigator finally located the Applicant's cousin and obtained a written statement. The information she provided was different from the Applicant's and would not be helpful to his cases. We were also able to speak with the gentleman that was in the car with the Applicant when the Applicant allegedly fled the scene. The information we gathered from him was also different from the Applicant's and would not be helpful to his cases. Applicant states that defense counsel put on no defense. If defense counsel did not put on a defense, how did the Applicant receive a verdict of not guilty on the worst of the two (2) cases. Applicant was never told that he had no

defense in addition to all the other statements in this allegation. The allegations contained in Applicant's complaints are completely false. I have never and will never tell a client to lie on the witness stand, especially under oath. The defense counsel team was present during the trial at every meeting in the holdover cell with the Applicant. The statements were never made to the Applicant. It is my belief that the Applicant is alleging these misstatements of fact in order to lessen the time he has to serve in prison. Every name, telephone number and FaceBook we were given had been called and/or investigated. We investigated many other leads that the Applicant did not give us, but we discovered on our own. The Applicant insisted on testifying no matter what we told him. The Applicant was the only individual that could testify to what he testified to. Everyone who was present outside the club at the time of the alleged incident was interviewed and/or statements taken and/or their statements listened to and/or reviewed. The Applicant keeps referring to self-defense against multiple assailants. That is not what happened in these cases and is not what the evidence in these cases revealed. The defense counsel team knew these cases forwards and backwards. The defense counsel team was well aware of the law that was applicable. The Applicant is now attempting to invent things stating that it applied to his cases when it did not. We did not voir dire on self-defense as a trial strategy. We did not want the State to question their witnesses in that regard in an attempt to catch the State off guard. The Applicant continues to argue that defense counsel admitted to his Exhibit A through silence. I or we had no duty, obligation or responsibility to answer.

In reference to Ground Seven — There were no objections to be made to the jury charge. The Applicant is incorrect in his assertion that the charge was read differently from what the jury charge actually stated. The defense counsel team as well as the court reporter followed along with the Judge as he read the jury charge. If it would have been read differently, defense counsel team would have objected. The Applicant was not entitled to a lessor included offense since he testified that he stabbed both individuals. The Applicant admitted to using a deadly weapon. Therefore, there should not have been a lessor included offense of assault with bodily injury. The Applicant is not entitled to a "imperfect self-defense" instruction. This defense is only used in murder cases in only a few jurisdictions and Texas is not one of those jurisdictions. The Applicant continues to argue that defense counsel admitted to his Exhibit A through silence. I or we had no duty, obligation or responsibility to answer.

In reference to Ground Eight — In these cases, all of the witnesses who were present at the alleged incident admitted to using alcohol as each said they bought pitchers of beer or had to pay their tab. There was nothing in the record, reports or the investigation by defense counsel that showed any of the Witnesses were intoxicated or under the influence of narcotics that caused them to act differently or not remember things. As part of our trial strategy, we had decided that we were only

going to ask important questions that we wanted the jury to focus on instead of asking a bunch of irrelevant questions. Apparently, our trial strategy worked since the Applicant received a not guilty verdict on the worst of the two (2) cases. The State did not portray the witnesses as "good people" as the Applicant claims. The State brought out their prior criminal records along with the fact that the witnesses had all ordered alcohol. Furthermore, the Applicant continues to argue that defense counsel admitted to his Exhibit A through silence. I or we had no duty, obligation or responsibility to answer.

In reference to Ground Nine — There was nothing that defense counsel team should have objected to that was not objected to in these cases. During the State's closing argument, defense counsel team would have objected to anything that was objectionable. The Applicant is arguing that the State's closing argument should have been objected to at some point. The State has a right to argue its case just as the defense team has a right to argue their case. The State did not misstate any of the laws applicable to these cases or they would have been objected to by the defense counsel. The Applicant is attempting to invent anything he can in an effort to make it appear that the defense counsel team did not do their job properly. The Applicant is making untrue allegations. The Applicant received a not guilty verdict on the worse of the two (2) cases. There were no misstated laws as the Applicant is claiming. There is not anything missing from the record. The Applicant is not "clearly" remembering things accurately. If someone was asked if they believe the accused party to be guilty, we would have objected to the statement. These things are being made up by the Applicant. Again, the Applicant continues to argue that defense counsel admitted to his Exhibit A through silence. I or we had no duty, obligation or responsibility to answer.

In reference to Ground Ten — The State offered 20 years to the Applicant a few days before trial. I had spoken to his grandmother, Juanita Farmer, a few days prior to trial and informed her that the State had come down from 25 years to 20 years, but Applicant would not accept the State's new offer. We were in Court when the 20-year offer was made, and I immediately relayed the offer to the Applicant. The Applicant insisted on getting ten (10) years or less or he wanted to pled open to the Judge. I spoke with the prosecutors regarding the Applicant's wishes and they would not agree to the Applicant going open to the Judge. They also would not agree to waive the jury. Each and every plea offer the State made was communicated and discussed with the Applicant. The plea acknowledgement the Applicant is referring to was the original "no offer" at the first setting and the second setting was when the State made their first offer. Those were the only two (2) offers reduced to writing and acknowledged. Any plea offer that is relayed to me on any case on behalf of my clients is discussed with my clients. I always obtain the best deal possible for all of my clients prior to going to trial. I communicate <u>every</u> plea bargain offer I receive to all of my clients. The defense counsel team did everything we could to get the State's

offer down on these cases. The State finally reduced their offer of 25 years just prior to trial to 20 years. Again, the Applicant was adamant about receiving ten (10) years or less. The Applicant believed that if the State did not offer ten (10) years or less, he could get that amount from the Judge. Furthermore, the Applicant continues to argue that defense counsel admitted to his Exhibit A through silence. I or we had no duty, obligation or responsibility to answer.

In reference to Ground Eleven — This is the same allegation that the Applicant complained about in Ground Six. The Applicant was never told by me to lie about anything. I have never and will never instruct a client or anyone else to lie under oath. The Applicant's testimony at trial is exactly why he received the not guilty verdict on the first case. Everything the Applicant said at the trial made sense. Now the Applicant is trying to say that I told him to lie and say that he only saw the holster. The Applicant was passionate with his testimony at trial and what he said made sense with the emotion he put behind it. Even if the Applicant had said that he saw the gun in the door, it would not have changed anything. His testimony would have had the same impact either way. I am not sure why the Applicant has decided to make these false allegations. It would not have expanded anything about the self-defense theory. To reiterate, the Applicant was never told to lie about anything. Co-Counsel was present every time we spoke during the trial. If Applicant's statement was true, Co-Counsel would have reported this counsel. Again, the Applicant continues to argue that defense counsel admitted to his Exhibit A through silence. I or we had no duty, obligation or responsibility to answer.

. . .

In reference to Ground Thirteen — I did not represent the Applicant in his prior case. All I could do is look at the previous judgment where there was a finding that the Applicant was competent. The competency issue is the only thing I could look at regarding his prior case. The Applicant was represented by another attorney in the prior case. Therefore, any complaint in that case should be made with that attorney. The defense counsel team did everything we could for the Applicant. The Applicant received a not guilty verdict in the more severe of the two (2) cases. It appears that the Applicant is attempting to file anything he can to avoid punishment on the case in which he was found guilty. The Applicant is fabricating stories and misstating facts about what actually transpired in his cases. Furthermore, the Applicant continues to argue that defense counsel admitted to his Exhibit A through silence. I or we had no duty, obligation or responsibility to answer.

SHR 139-43, ECF No. 18-32.

Weaver also submitted an affidavit, in which he stated (any spelling, punctuation, and/or

grammatical errors are in the original):

2.      I was second-chair co-counsel for the defense during Applicant's trial on or around September 12-15, 2016. In late August 2016, Ray Hall, appointed lead counsel, agreed to let me participate in Applicant's trial as second-chair. In late August 2016, Mr. Hall provided to me part of his file regarding this case that likely included the indictments and police reports, which I reviewed. I no longer possess any documents related to this matter as any documentation I had was given to Mr. Hall at the conclusion of the trial.

3.      I did not perform any independent investigation related to this case. Mr. Hall and I discussed the case and trial strategy prior to the trial and it was decided that my participation would include voir dire and the cross-examination of several witnesses. The likely testimony of the witnesses that I would cross-examine was discussed by Mr. Hall and me based on Mr. Hall's investigation, as were possible cross-examination questions for each witness. At no time did Mr. Hall attempt to relinquish any duty he owed to Applicant as Applicant's appointed counsel and all of my participation in the trial was under Mr. Hall's supervision and with his permission. Prior to it being decided by Mr. Hall and me in late August 2016 that I would be assisting in the trial, Mr. Hall had already performed, in my estimation, a thorough investigation of both cases to be tried, and was, in my opinion, absolutely prepared to go to trial by himself should my schedule have not allowed me to participate. My participation in the trial was always under the close supervision of Mr. Hall. The remainder of this affidavit will address Applicant's grounds of error in which Applicant claims he received ineffective assistance of trial counsel.

4.      In response to Applicant's Ground Three:  Applicant complains that counsel did not file any post-verdict motions. I recall discussing with Mr. Hall after the verdict was read whether there were any post-verdict motions that should have been made at that time and determined that there were none. Further, Applicant in this Ground, and others, complains that counsel did not respond to Applicant's Exhibit A that he attached to his writ, and that by not responding to said Exhibit A that counsel admits to everything therein. Applicant's Exhibit A was not sent to me by Applicant and therefore I have no response to this allegation.

5.      In response to Applicant's Ground Four: I recall discussing with Mr. Hall during our trial preparation the issue of severence, and Mr. Hall informed me that he and Applicant had discussed the issue and decided that no severence should be made.

6.      In response to Applicant's Ground Six: As stated above, I conducted no independent investigation of the case. Mr. Hall never asked, or suggested to, Applicant that Applicant should lie about anything. In fact, it was made clear to Applicant prior to his testifying that he first and foremost must tell the truth and only

the truth.

7.     In response to Applicant's Ground Seven: No objections were needed regarding the jury charge. I read the charge as it was read by the Judge in open court, and followed along. Had the Judge's rendition of the charge differed from what was in the written charge, I would have immediately notified Mr. Hall so that an objection could be made. The Judge's rendition did not differ from what was in the written charge.

8.     In response to Applicant's Ground Eight: Mr. Hall and I discussed cross-examination topics and questions for all the witnesses we expected to testify and determined that, as trial strategy, we would ask important questions for the jury's benefit. Mr. Hall and I took in consideration the entire file and results of Mr. Hall's investigation in forming our strategy.

9.     In response to Applicant's Ground Nine: Had the prosecution misstated law or facts, Mr. Hall or I would have objected. Nothing in the State's arguments was objectionable or not allowed by law. The State's attorneys are allowed to argue their case and draw reasonable inferences from the evidence just as defense counsel is.

10.     In response to Applicant's Ground Ten: I was not involved in any of the plea offer communications with Applicant.

11.     In response to Applicant's Ground Eleven: This Ground appears to be similar to Ground Six. Neither I nor Mr. Hall at any time ever asked, instructed, or suggested to Applicant that he lie. In fact, we made it clear that [he] must tell the truth and only the truth.

12.     In response to Applicant's Ground Thirteen: Neither Mr. Hall nor I represented Applicant in his prior case. Any complaint about that case should be made against the attorney that represented Applicant in that case. I recall that Mr. Hall and I reviewed judgment in the prior case to determine whether there was a finding that Applicant was competent and determined that such a finding existed.

*Id.* at 135-37.

The magistrate judge entered factual findings consistent with counsel's affidavits and concluded that Petitioner had failed to satisfy either prong of *Strickland. Id.* at 164-70, 173-76. The actions of the magistrate were adopted by the trial judge, and the Texas Court of Criminal Appeals denied relief based on the trial court's findings. *Id.* at 182. Petitioner presents no evidence or

18

persuasive argument to rebut the state court's findings and conclusions. Therefore, relying on the presumptive correctness of those findings, and having independently reviewed Petitioner's ineffective-assistance-of-trial-counsel claims in conjunction with the state court records, the state court's application of *Strickland* was not objectively unreasonable under the doubly-deferential standard applied to such claims. Petitioner's claims are conclusory or speculative with no legal or evidentiary basis, contradicted by the record, would have required counsel to make frivolous objections or motions, or involve strategic decisions by counsel, which are either insufficient to raise a constitutional issue and/or outside this court's perview on federal habeas review. *See Strickland,* 460 U.S. at 689 (holding strategic decisions by counsel are virtually unchallengeable and generally do not provide a basis for post-conviction relief on the grounds of ineffective assistance of counsel); *Green v. Johnson,* 160 F.3d 1029, 1042 (5th Cir.1998) (holding conclusory arguments are insufficient to support claim of ineffective assistance); *Koch v. Puckett,* 907 F.2d 524, 530 (5th Cir.1990) (concluding that "counsel is not required to make futile motions or objections).

Petitioner also claimed that his appellate counsel was ineffective by failing to file a brief raising any issues, notably the issues raised in his state habeas application. Pet. 11, ECF No. 1; Pet'r's Mem. 28-29, ECF No. 2. The state habeas court adopted the following factual findings on the issue:

103.   Applicant's appellate counsel filed an *Anders* brief.

104.   Applicant filed a pro se brief.

105.   After considering Applicant's pro se brief, the Second Court of Appeals found "nothing in the record that might arguably support the appeal."

106.   Applicant presents no credible evidence that appellate counsel's representation fell below an objective standard of reasonableness because he

19

chose to file an *Anders* brief.

107.    Applicant presents no credible evidence that the outcome of the proceeding would have been different had counsel not filed an *Anders* brief.

SHR 171-72, ECF No. 18-32 (citations omitted).

Based on those findings, and applying the *Strickland* standard, the state court entered the

following legal conclusions:

59.    An attorney is under an ethical obligation not to raise frivolous issues on appeal.

60.    An attorney is prohibited from raising claims on appeal that are not founded in the record.

61.    Counsel is not required to advance every argument; however, if he "fails to raise a claim that has indisputable merit under well-settled law," and the issue would have affected the outcome of the proceeding, counsel is ineffective for failing to raise it.

62.    Applicant has failed to prove that appellate counsel's representation fell below an objective standard of reasonableness because he filed an *Anders* brief.

63.    Applicant has failed to prove that his appellate attorney's representation fell below an objective standard of reasonableness.

64.    A party fails to carry his burden to prove ineffective assistance of counsel where the probability of a different result absent the alleged deficient conduct "sufficient to undermine confidence in the outcome" is not established.

65.    "[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. The object of an ineffectiveness claim is not to grade counsel's performance. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed."

66.    Applicant has failed to show that there is a reasonable likelihood that the outcome of the appellate proceeding would have been different had appellate counsel not filed an *Anders* brief.

67.     Applicant has failed to show that there is a reasonable likelihood that, but for the alleged acts of misconduct, the result of the appellate proceeding would have been different.

68.     Applicant has failed to prove that he received ineffective assistance of appellate counsel.

*Id.* at 178-79 (citations omitted).

Petitioner presents no evidence or persuasive argument to rebut the state court's findings and conclusions. Therefore, relying on the presumptive correctness of those findings, and having independently reviewed Petitioner's ineffective-assistance-of-appellate-counsel claims in conjunction with the state court records, the state court's application of *Strickland* was not objectively unreasonable under the doubly-deferential standard.

To demonstrate ineffective assistance of counsel based on his appellate counsel's failure to file a merits brief, a petitioner must show that his counsel "unreasonably failed to discover nonfrivolous issues and to file a merits brief raising them" and that "but for his counsel's unreasonable failure to file a merits brief, he would have prevailed on his appeal." *Smith v. Robbins,* 528 U.S. 259, 285 (2000)). Petitioner cannot demonstrate prejudice because he has not identified any meritorious claims upon which he was likely to prevail on appeal.

### E. Denied Trial Counsel at Critical Stage

Under his fourth ground, Petitioner claims that he was denied counsel at a critical stage in the state-court proceedings. Pet. 7, ECF No. 1; Pet'r's Mem. 25-28, ECF No. 2. Specifically, he claims he was denied court-appointed counsel (1) at the initial hearing, thus waiving his right to an examining trial and his right to be present at the "grand jury hearing, to present a pre-trial statement in regards to his defense at the grand jury hearing, and to preserve the record of this hearing," (2) for

21

nine months following his arraignment, thus hindering the investigation of his case, and (3) at a court-ordered mental evaluation. He also claims that the state courts' fact-finding process was inadequate to resolve the issue because he was not allowed to supplement the state habeas record with "other stated facts and critical stages." Pet. 7, ECF No. 1; Pet'r's Mem. 26, ECF No. 2.

Petitioner's claim that he was denied counsel at the court-ordered mental evaluation was not exhausted in the state courts, and is expressly waived. And, as noted above, his claim that the fact-finding process was inadequate during the state habeas proceedings is not a basis for federal habeas-corpus relief.

As to his remaining claims, the state habeas court adopted the following factual findings on the issue:

90. The complaint in this case was filed on April 27, 2015.

91. [Petitioner] was indicted on May 8, 2015, less than two weeks after the complaint was filed.

92. On November 20, 2015, [Petitioner] was confined in Johnson County on a separate offense.

93. On November 20, 2015, [Petitioner] wrote a letter to this Court, requesting he be benched to Tarrant County for this case and requesting appointment of counsel.

94. Tarrant County declined to bench [Petitioner] immediately because "per extradition (JP) Johnson will rise to [Tarrant County] when their case [was] disposed."

95. [Petitioner] was indicted before he requested appointment of counsel.

96. On or about February 5, 2016, Tarrant County benched [Petitioner] from Johnson County.

97. On February 4, 2016, [Petitioner] was brought before the magistrate and requested appointment of counsel.

98.    On February 4, 2016, the magistrate ordered [Petitioner] to be examined for mental illness and mental retardation.

99.    On February 5, 2016, Mr. Kenneth Mullen was appointed to represent [Petitioner].

100.    The first court setting in this case occurred on February 22, 2016.

101.    On February 24, 2016, Mr. Ray Hall, Jr. was appointed to represent [Petitioner].

102.    [Petitioner] presents no credible evidence to support his claim that he was denied counsel during any "critical stage" of his prosecution.

SHR 170-71, ECF No. 18-32 (record citations omitted).

Based on its findings, and applying relevant state law, the state court entered the following

legal conclusions:

49.    When determining whether a particular event is a critical stage—thus triggering a Sixth Amendment right to counsel—depends on whether the accused requires aid in coping with legal problems or assistance in meeting his adversary.

50.    When an indictment occurs prior to arraignment or any other legal proceeding, the Sixth Amendment right to counsel does not attach before indictment.

51.    The return of an indictment terminates the right to an examining trial and establishes probable cause as a matter of law.

52.    Because [Petitioner] was not entitled to appointment of counsel before indictment, and the right to an examining trial terminates upon the return of indictment, [Petitioner] has failed to prove that he was denied his right to counsel.

*Id.* at 176-77 (citations omitted).

Petitioner has failed to present clear and convincing evidence to rebut the state courts' factual

findings: thus, deferring to those findings, the state court's adjudication of the claims was not an

unreasonable application of federal law as determined by the Supreme Court. The Sixth Amendment right to counsel attaches at or after the time that adversary judicial proceedings have been initiated by way of formal charge, preliminary hearing, indictment, or arraignment. *Kirby v. Illinois,* 406 U.S. 682, 688-91 (1972). In this case, the right to counsel did not attach for the underlying offense until Petitioner was indicted in Tarrant County. The Sixth Amendment right to counsel is offense-specific. *McNeil v. Wisconsin,* 501 U.S. 171, 175 (1991). Thus, Petitioner's arraignment or initial hearing on unrelated charges in Johnson County did not invoke the right. Furthermore, there is no constitutional right to an examining trial or corresponding right to counsel. *See Hunnicutt v. Watkin,* No. 3:10-CV-0618-BH, 2010 WL 1997115, at *4 (N.D. Tex. Apr. 28, 2010) (citing cases). Similarly, an accused has no right to appear before a grand jury to present evidence prior to indictment. *United States v. Donahey,* 529 F.2d 831, 832 (5th Cir. 1976); *United States v. Fritz,* 852 F.2d 1175, 1178 (9th Cir. 1988). Nor has Petitioner demonstrated that the investigation of his case was frustrated by the delay in appointing counsel for him.

### F. Inadequate Law Library

Under his seventh ground, Petitioner claims that the prison law library was inadequate to research clearly established federal law, thereby "restraining" his liberty to pursue federal habeas relief and access to the courts. Pet. 11, ECF No. 1; Pet'r's Mem. 29-30, ECF No. 2. This claim fails to state a claim for habeas relief because it does not challenge the fact or duration of his confinement. *See Preiser v. Rodriguez,* 411 U.S. 475, 488-90 (1973) (providing that the federal habeas statute is "explicitly and historically designed to provide the means for a state prisoner to attack the validity of his confinement").

**V.  CONCLUSION**

For the reasons discussed herein, Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is **DENIED**. Further, pursuant to 28 U.S.C. § 2253(c), for the reasons discussed herein, a certificate of appealability is **DENIED**.

**SO ORDERED** on this 5th day of March, 2021.


_____
Reed O'Connor
**UNITED STATES DISTRICT JUDGE**

25